ID Exploration & Prodn, Inc. v. ID Exploration & Prodn, Inc. v. ID Exploration & Prodn, Inc. Next, final case of this morning is, I'm sorry, BP Exploration v. Claimant I, I'm just going to call you Peller and Milner, ID number blah, blah, number 1830296. Mr. Nielsen. Thank you, Your Honor. My name is Aaron Nielsen. I'm here on behalf of the BP entities. The remedy that BP seeks here is quite modest. All we want is a remand. The reason that we seek this remedy, however, is foundational. The question in this appeal at bottom is what procedural safeguards are protected by the Deepwater Horizon settlement? We respectfully submit that there are at least three here that are fully protected by the settlement and that were not followed in this particular claim. First, there is an obligation to treat like claims alike. Second, there is an obligation that facts will be found by the entity that has the institutional ability to find facts. And third, that decisions should be reasoned in that the person making them gives the reasons for why they have reached the decision that they did. Mr. Nielsen, who wrote the procedural rules of which Rule 17d5 is one? That was written by the the appeal coordinator in coordination with the appeal panels. Well, surely BP had some input into those rules, into the drafting of those rules? Correct, Your Honor. And doesn't Rule 17d5 in its own terms, you know, allow the appeal panel to do what it did here? No, Your Honor. With respect, it does not. Rule 17d5 says that the appeal panel, 17 and Rule 13 allow for new evidence to come in. And then Rule 17d5 says what should happen. And Rule 17d5 has two things. It says this is when you remand. You remand if you can't if the evidence does not support one of the two awards or if the evidence does not allow the court to know if it supports one of the two awards. And respectfully, this fits both. Here we introduced evidence the first time that we could is when after the claims MPP sees it and we did our own investigation, we said, well, look, there's on their own web page, there's evidence that they have a location in overseas in Brussels and we have employees that claim to be employed by them. Let me ask you a question about that, because, I mean, I'm not an expert in business, but those are salespeople in Belgium and salespeople in Idaho or wherever it is. Isn't it quite often the case that a salesperson doesn't have to have a physical office? A salesperson can work out of his home or out of a multi-purpose office and that that is not necessarily a facility. First of all, I'll take that in steps. One of the two employees at issue was not a salesperson. It was an engineer. But second, sure, it is certainly possible for a salesperson not to have an office. We are not, we don't claim we have a silver bullet here that says, ha ha. But it's not, see, I mean, in terms of, at some point in your briefing, you say this Rule 17 D5 ought to just be abandoned or something, which seemed to me out of order. I apologize, if that's how we came across, that was not our intent. Our intent is only that Rule 17 D5, to the extent that it contradicts the settlement, well then, of course, the settlement is going to control. I don't think, I don't see any conflict here at all. As we said in our brief, I think that we are fully supported here by Rule 17 D5, which, by the way, didn't come into this appeal. I don't think, I don't, you didn't explain how the rule contradicts the settlement either, as far as I can tell, but, except for your general, general argument, but, the whole. Because it doesn't, Your Honor. I don't think there is a conflict between Rule 17 D5 and our. Okay, then I'll leave that alone. Okay, but you go to 17 D5 and it says, the panel may remand only if the new document, which I presume would be your, your screenshots and their affidavit, shows that the, it would change the outcome of the determination, or the information in the record is not sufficient to support. Well, the information in the record is sufficient to support what they were claiming, surely. So, you'd have to go to A, that you would have to show, it seems to me, that this, these new documents would change the outcome of the determination. And I'm just suggesting that when the president of the company puts in an affidavit and says, wait a minute, we have only one facility, you, you really ought to, you're really saying that he's lying, which is, if they're such a big company as they appear to be, that's a pretty strong allegation. Again, I don't. I'm just asking for the common sense of this. Yeah, I don't, I'm certainly not trying to say that they're lying. I am saying that different people look at different facts in different ways. So, here it is. Here's a possibility. We know that there is some relationship between Pellner-Milnor and Milnor International. You don't let another company put themselves on your webpage, unless there is at least some sort of relationship there. They also share an email address, with the only difference being the .com versus, versus EU. So, we know that there is some relationship between these two entities. We also know that the claimed administrator had no idea that this other entity existed. When that happens, now, it could be that they are the same entity. It could be that they are related entities, in that they don't deal in arm's-length relationships with each other. This is a manufacturer of commercial laundry equipment, correct? Correct, Your Honor. All right. Does it have a manufacturing facility in Belgium? Of course not. Of course not, Your Honor. And what it has is a sales office, right? Correct, Your Honor. At most. At most. And you're saying that even if there is a hard, I mean, facility means a hard asset, right? Under the definition. Yes, Your Honor. We can talk a little bit about what facility means, but I think I'm true. Yeah, I mean, it doesn't mean some fellow who is the international sales rep who occupies his, you know, if he operates out of his home or multi-purpose office, right? Probably not. If that's. It would depend. It could depend on the specific asset. What I'm suggesting is, unless you've had more, maybe you could have had a Google Earth or something spy out what this location might be in Brussels. But it just doesn't seem to me to rise to the level of dubiousness that we have seen in other claims in this. Well, that's certainly true. And that's our point. That's why we're only asking for a remand here. But that's why I'm suggesting if you're really concerned about this, you ought to have a case where it's a little bit more dramatic failure to remand. I mean, shouldn't there be some kind of common sense de minimis failure of, and I'm not even saying it's a failure, anomaly between the claim and some defense that BP can cook up? Well, I don't think we're cooking up defenses here with respect, Your Honor. But here's, again, the concern. We know that there is a facility. I've not heard them ever suggest that the facility in Brussels is somebody's home. I've never heard that suggestion. The affidavits certainly don't say it. Well, they've said it's a different company, Milnor International. Correct. They've said it's a different company. And that's a different question from whether it's a physical building. I'm assuming it's a subsidiary. So I'm assuming that in your favor. But still in all, the guy says it's a separate company. It's... Well, that's the thing. So again, look at the affidavits here. They are very lean. And they're written, I think, with a lawyer's precision. I'm not saying that derogatory. We know they say, for instance, that the foreign subsidiary or the foreign entities, profits and losses are not reported on their profits and loss statements. Sure. Okay. But does that mean that you are dealing with them? Are you sharing the expenses of employees? These are the sorts of things that we would expect to come up. How could this affect their claim? Well, for instance, this is a great question. This is a way it could affect their claim. If, in fact, these two individuals are shared employees or being paid by both, we'd want to know their expenses. Because those expenses would then be on the other side of other entities' books and not their books. And because the profit test is how much difference there is, if you have expenses that are not counted on your books because you're off on your related parties' books, well, then the award is going to be too high. That's one easy example where the award would be too high if, in fact, they're related entities, which they very well might be. But there's no doubt that the domestic— I thought there were two domestic people. There are more than two. There are two in Brussels. Well, they were included as employees. The domestic people were included as employees. Correct, Your Honor. Okay. Correct. But there's also the two folks in Brussels. And we don't know anything about them. And for us, we look at this— Do you have any reason to think that they are anything other than salespeople? Yes, Your Honor. One of them is listed as an engineer on the LinkedIn page. Well, that just— Do you have any reason to believe that they're anything other than salespeople? You know that they're not designing things in Brussels, right? I don't. I don't know that, Your Honor. We just had a case— Can you ask anybody— Just one other—I'm sorry to dominate this, but is there one other— Can't you go out and ask you being BPs, people? Go out and ask the locals to find out whether this is really an international concern in the sense that you're talking about with facilities? I mean, I suppose that we could. Up to this point in the process of the settlement, we've never had to. What we've done in this situation—and we cite a whole bunch of appeal panel decisions where this comes up—we get the claim. We do our research. We find questions. They say, wait a minute. Now, this doesn't happen in most claims, but it happens in a few. And then we go back to the appeal panel and we say, look, there are real questions here and sometimes they'll come back with an explanation. We say, okay, all right. We asked for a date. We didn't think you were working. You have your invoices. You were. Okay, we understand. Here, we said that same process. We said, look, there's something going on here. We don't quite know what it is, but there's something going on here. We have two folks who claim to be employed for them overseas. And will we expect it? Because this often happens and they send it back and they ask them for questions. None of that happened here. Okay, well, we just had a case that was decided by a panel I was on, 18-30593, claimant ID 100225009. Your firm was on it. I didn't see your name on it. That's what I was looking at, trying to see if you were on the brief. And that was a case where the appeal panel did send it back to decide if these facilities in Georgia and New York were actually facilities or not. Yes, Your Honor. And they said, nah. And y'all still appealed that all the way to us, saying that it's a matter of law. They got that wrong and so forth. And we said, no, this is a factual question. Sure, Your Honor. So it doesn't seem like the appeals panel sending it back stops y'all from appealing. Well, with respect, Your Honor, different appeals are going to have different facts. We took that position. I wasn't one of the lawyers in that one, but I know the case that you're referring to. We took that position because we thought as a matter of law that they erred as to the definition of facility. We know that the Court respectfully disagreed, and that's fine. But here the problem is we have no idea what the facts are over there because nobody has looked. And that seems very problematic to us. Now, it's possible that the facts are going to come out and there's nothing there, in which case this case is going to be over. But our problem is, and this is a process error. But you're saying as a matter of law the district court had to exercise the discretion to tell the appeals panel to send us back. I mean, that's what you're saying. Correct, Your Honor. Because it's a discretionary review. Correct, Your Honor. And our review is of that decision. Correct, Your Honor. The decision not to take discretion. We keep losing sight of that, but that is our question. Did the district court err in denying discretionary review of the appeal panel decision? Yes, Your Honor. So that's a pretty tough one. Well, with respect, the Court has issued a number of reasons why you might say there's an error or not, an abuse of discretion. One is if there's a split. We've identified a bunch which said this is almost automatic, that you're supposed to send it back when you get the sort of But this is a split on whether you need to send something back to find facts. I mean, isn't that inherently fact-bound and case-specific? Well, I don't think so, Your Honor. And if so, all that is all the more reason to have the Judge Barbier figure this out in the first instance, because some appeal panels are saying that when we have a material split, it goes back. And here, this one, that's not what happened. I suppose BP is going to be, to say nothing of the Court, involved in this litigation for years and years to come, since there are hundreds of thousands of claims. Do you see any pattern at this point as to Judge Barbier's reluctance to decide any of these claims? Well, we're hoping this isn't going to take years. The end is in sight. And that's one of the reasons I'm concerned with this one, is I'm afraid they're cutting corners because the end is so close. Why is the end close? Well, because we've almost exhausted all of the claims in the settlement program. So we're almost to the end. And we realize and we apologize to the Court that BP has sent a fair number of appeals at the end to you. The reason we're spending a week in New Orleans because of that, I think. The reason for that is because the claims administrator and the settlement program, the appeal panels, have waited until the end to resolve many of the largest claims, which often happens because they're the most complex ones. So we have all these ones kind of at the end. A lot of the earlier ones are already complete. So now we're stuck with all of these at the end. We want the Court just to remember the denominator here. There really are hundreds of thousands of claims. We are not appealing willy-nilly. I know we might have disagreements on particular claims, but that's not our intention here. That's what — that wasn't exactly what I was asking you. I was asking whether you see a pattern in Judge Barbier's reluctance to deal with any of these cases. Well, Judge Barbier has done — he has had a very challenging task, perhaps the most I — and I say this with respect to Judge Barbier. I don't quite understand the pattern as to when he grants and when he doesn't grant discretionary review. I think he certainly should have done so here. I'll reserve the balance of my time. Okay. All right. Mr. Murphy. May it please the Court, Your Honor. Robert Murphy representing Pelliner-Milner. This is a meritless appeal of a purely factual dispute. The district court did not abuse its discretion in declining review. And you're right, Judge Haynes. You were on a panel that decided almost the same factual situation just last December. And although BP tried to dress up a multi-facility case as a legal issue, the Court correctly found that it was a purely factual issue that was presented and found that the district court did not abuse its discretion in that case. That case is so similar to this that I should stop right here. But I'm a lawyer, so I'm not going to. It's not published, though. It's not binding on us. As beautiful and brilliant as it is. BP brought up this factual dispute about whether there was a multi-facility involving Pelliner-Milner with this operation in Belgium. We responded with affidavits that purely showed that there was no other facility. We didn't own, operate, or lease another facility in Belgium. We showed that it was a separate and distinct corporation. They did not contravene any of those issues. Now, they've asked for a remand, but in this Court, it says it's a modest request. But Judge Jones, you were absolutely correct. The appellate rules for the process, settlement process, 17d.d.5, says you only get a remand if new documents change the outcome of the settlement program's valuation and it does not match either BP or Pelliner-Milner, in this case, final proposal. Or if there's not... Are they supposed to find out what's going on in Belgium? I mean, do they have to send somebody up to Belgium and wander around looking at this office and seeing what people are doing? And, I mean, it seems like you're saying we win because we say we won. We got the affidavit from the vice president or whatever. And BP had no opportunity to really fill that out. What opportunity did they have to undermine that if that was a lie? They could have submitted any other documentation that they might have had that they could get... Well, they have these... You're an officer of the Court. What is the facility and what is the deal in Belgium? The deal in Belgium is that there's a service organization over there that provides customer support, as I understand it, for machinery that might be sold overseas. Well, obviously. But is that sort of like authorized distributors in the United... Authorized repair facilities in the United States? For instance, if you buy high-end kitchen equipment or a Sears or whatever, where so and so will be an authorized repair troubleshooter for Sears or Thermador or whatever it is? Well, what I know is that it's a separate corporation. That's us. Go ahead. And I know that under the term facility, which we are dealing with here, whether it was a multi-facility or a single facility, we met that burden in showing that we didn't own, operate, or lease any other premises anywhere other than the premises that we have in Kenton, Louisiana, where everything is produced. And the fact that you might have a remote employee somewhere, the rules provide that it's, what is it, policy 467, says that you don't base a facility based on where employees may be located. Do you have employees that work in both places? Pardon me? Do you have employees that work in both places? No. I thought you did. I thought the whole point of this was that you have employees who report that they work in different offices. This is a separate corporation that does provide support services. I'm not sure what those services actually are. But we don't have employees in Milliner International. There's no employee that works in Kenner, Louisiana, and also works outside of Kenner, Louisiana? As far as I know, no. I think our employees are, I mean, the people who manufacture all the equipment are in Kenner, Louisiana. Now, there might be salespeople around the world who do sell. Wait a minute. You said that you have a small number of employees that work remotely. That's correct. All of whom work through, well, they may be in Idaho. But they report to Kenner. Well, that's creative, but okay. I mean, but that's what it is. Right. But it boils down to, in this situation, it is a factual issue that was presented to the appeals panel. The appeals panel had the right to either remand that to the settlement program, or in this situation, they only had to remand it if two things had occurred, and the appeal panel found that neither of those things occurred. So the appeal panel had the right to receive evidence, as they've done in many cases, the right to make credibility determinations, and the right to make a decision as to what was the correct result as to whether to accept Pelletter-Milner or BP's determination or final proposal, and that's what they did in this case. This is a what, a $2 million award? Yes, Your Honor. How is it that this laundry, this, the manufacturer's commercial laundry facilities, how is it hurt by the BP, the Deepwater Horizon? Your Honor, I was brought on for appeal. I'm not involved in the operations or workings of Pelletter-Milner, but I imagine they had a lot of sales that didn't go through for some reason or other that was located, and they met the causation requirement of the V-curve, or we wouldn't be here today. I guess that's right. So, but the issue is, what was brought to the, what was brought to the district court was not an issue of, well, what was brought to the district court was three things. Whether the settlement program properly evaluated Pelletter-Milner's out-of-the-zone facilities and the calculation of the award, a factual issue. Whether the appellate panel had relied properly on the Pelletter-Milner affidavits, which was a credibility and factual determination, and whether the appellate panel had erred in not remanding this case to the settlement program. Those are the only things that were presented to the district court on discretionary review. The only things. And in that situation, the district court was well within its discretion to make a determination of the factual issues or to decline review because they involve factual issues and credibility issues. Why does the, why does Pelletter-Milner, why does your client have a vice president who has on their LinkedIn page that they work in the greater Milwaukee area? Greater Milwaukee area? Yeah. Because he's a salesperson, I imagine, that works up there. So, was that in front of the appeals panel? Like, did they, how did the appeals panel reconcile in their zone determination as to your client's injuries with respect to all of these employees? I mean, that's not a salesperson. It says vice president. Some of these people say sales. I'm not sure, Your Honor. But this says regional sales manager. That I understand. But this one says vice president at Pellen, at your client's corporation. What was the reason decision making that would suggest that we don't need to consider that? Your Honor, I can't tell you that. But I can tell you that those are the issues that were presented to the appeal panel. They had the right to make that determination. And they did. And then what was brought to the district court was whether there was an abuse, you know, whether they, whether there was an abuse of discretion on their part in making that determination. But I think that what has been brought to this court is solely whether there was an abuse of discretion by the district court in not, in declining to do this discretionary review. Suppose one appeals panel says, we find record evidence that there is a vice president who works outside of the zone area. Therefore, we're going to remand it for further factual development. And a second appeals panel says, we see that there is a vice president who works outside of the zone area, but we're not going to remand it. Would you agree that that is an abuse of discretion? No, I don't think it's an abuse of discretion. I think it's determination on the particular facts of the particular case, which is what the appeal panel were allowed to do. You just disagree, you just disagree fundamentally that the appeals panel has to treat identical facts. I just gave you my hypothetical. The facts are the same. It's a vice president for a corporation working outside of the zone area. Those are the facts. That there is no constraint on the way that the appeals panel works with respect to two different cases presenting the same fact. I think that, you know, you say they're identical facts. I think the facts are never identical in a situation like these that have been presented in this case. So the appeal panel is vested with that, the right to make those determinations on its own. I understand. I'm trying to understand. I'm not getting into the facts. What I'm trying to understand is the legal principle that you are divining out of the system that dispenses millions of dollars. And what I'm asking you is if there were a case where there's a vice president who works outside of the zone area, and that gets a remand because that wasn't in front of the claims administrator in the first instance, and then there's a second case with a vice president working outside of the zone area, and it does get a remand, what is the legal principle that comes out of that? And my understanding from you is that there is none and that the claims, that the appeals panels can do that without impunity. Right. Well, all I would say is that I think that the appeal panel has to make the determination based on what is presented to them. And what you look at for the district court is whether, you know, whether there has been any kind of an error that has been committed in violating the district discretionary review rules, and whether the appeal panel, whether they should have remanded based on what those, these appeal panel rules are. And in this situation, it doesn't provide for that. And what the district court, what BP has done in this appeal is bring up issues that were not presented to the district court. They have not brought up, if they wanted to bring up this issue of the recurring issue that every case should be remanded when there's new evidence presented at the appellate panel, they should have brought that up to the district court. They did not. They did not bring up to the district court that there was any kind of split in the appellate panels on, with respect to whether a remand was absolutely required any time new evidence was presented. None of that was presented to the district court for review. Yet, at the appeal here, at the Fifth Circuit, they're saying that Judge Barbier abused his discretion in this case, abused his discretion in this case on issues that were never presented to him. They never presented to him that there was any kind of a recurring issue on whether remand must always be granted when new evidence is presented, when new affidavits are presented at the appeal panel ever. They never brought to Judge Barbier's attention that there was a split, supposedly, with respect to whether remands were being required by certain appeal panels and not by other appeal panels. None of that was brought. And under the rules, the Discretionary Review Rule 17, if they had an issue that they thought had an impact and was merited discretionary review, they had to have a clear statement of how the appeal panel failed to comply with the settlement agreement. They didn't do that with respect to the recurring issues and split panel decisions. They didn't ask, didn't explain why extraordinary relief should have been granted. And they didn't ask for relief sought. What they're telling us here in this Court is that any time there is new evidence, new affidavits submitted to the appeal panel that hold up appeal panel, you cannot make a decision on that, which is completely contrary to the discretionary rules, not discretionary rules, but the appeal panel rules, completely contrary to that. So our position is that that was never brought to the attention of Judge Barbier. And under this Court, under the Discretionary Review Rules, that issue that is now before us about the recurring issues, about, you know, whether a remand is absolutely required when new evidence is submitted, that has been waived. And that wasn't brought to the discretion — that wasn't brought to the judges — district judges' attention. It wasn't brought — it wasn't an issue presented there. And under Fifth Circuit rules, if an issue isn't presented to the district court, it can't be presented at the court of appeal. It's waived. The question I'm asking you was presented to Judge Barbier, right? Because I have — there's record sites for these. So record of — record on Appeal 620 has the printout of the LinkedIn page of the employee that I'm proposing to you. Okay. This was presented to Judge Barbier, along with the argument that this should be remanded, just like other cases have been remanded. And what I understood your argument in your brief to be was much more modest, which was simply that the appeals panel implicitly judged Barbier by denying discretionary review, determined that this was not a material dispute, right, in light of the affidavits that your client filed. But that's a very different proposition than it was never presented to him. I mean, my understanding is it was, in fact, presented to him. He did, in fact, have the opportunity to decide whether and to what extent having a vice president of a corporation outside of the zone area raises a question. It was brought to — it was brought to his attention. They requested a remand of this particular case. But what they didn't say was that this was a recurring issue as to whether every matter, when there's new evidence presented, new affidavits presented, whether every matter has to be sent back to the settlement program for determination. That was never presented to Judge Barbier. It was in this case about whether — telling him that there was a man from Milwaukee or remote personnel. And so because of that, you have to take a look at it. But that is exactly why he's got the discretion in cases such as this to not exercise his discretion and review a matter. And that's what he did. I understand the standard of review, and it's quite permissive. That makes some sense. But what I'm trying to understand is the legal principle that would prevent having the next case where there is a regional vice president that BP discovers outside of the zone area. And what I'm understanding from you is that there is no law that applies there. Not that I know, Your Honor. I think it's a matter of discretion, a matter of review by the appellate panel and also by Judge Barbier. He's got the right to determine whether there is such an issue that requires him to actually act and to exercise his discretion and review a matter. Our position is that this is a meritless appeal. They brought to this Court an issue that was not presented to Judge Barbier about this mandatory remand that required supposedly every appeal panel to send matters back to the settlement program. That was never presented to Judge Barbier. We think they've known from the outset that this was a matter that was purely a factual dispute as to whether this man from Milwaukee or man from wherever had an impact on this particular case. But we do know that the rules that set up what is a facility, 467, did speak to the location of an employee does not determine where a facility is located. And from the evidence presented, the only facility that this company had was a single facility in Kenner, Louisiana. But we think that in this particular case, they've taken an issue, they went on the Internet, found somebody in different locations, found this other company in Belgium, and they've just dragged out paying what we believe is a legitimate claim. And we believe what they've done is actually frivolous in pursuing this appeal. So we would ask that the Court not only affirm Judge Barbier's decision, because there's been no abuse of discretion, the only issues presented to him were solely on the issue of factual issues and credibility issues, and that you affirm his decision and that you find that this was a frivolous appeal by BP. I believe my time is up. Thank you. I'll just say one thing. I may reaffirm what Judge Oldham said. I do not see anything in your brief that says that BP waived these arguments. What it says is BP has waived the attestation argument basis, but not on the question about whether to remand. Your Honor, you're correct. I mean, we've discovered that in further review of the case that it was never, ever brought to Judge Barbier's attention, these particular issues. Thank you. All right. Mr. Nielsen. Thank you, Your Honor. I want to start with how we ended there. I have never been accused of filing a meritless appeal, and I have not filed a meritless appeal in this case. The suggestion that, first of all, let's go back and look at the big picture here. This is a $2 million claim. We have, I think, material questions. We have a whole line of authority that says you've got to send it back when this comes up. Judge Barbier himself has done it twice, so we filed this appeal. Now they say that there's a waiver, and with respect, Your Honor— Leave it. Leave it. That's absurd. Okay. Well, thank you, Your Honor. That was our sense as well. They also say that our position is that any time new matters come up at the appeal panel stage, it has to go back. That is not our position at all. Our position is when there is a material dispute of fact—and here there certainly is. They say X, we say Y, and we have some information. We don't have all the information, but we have some. It goes back. Judge Barbier has had other cases like this, and Judge Barbier, in that situation, we think consistent with the text of the settlement, has said this goes back. We have a whole line of appeal panel decisions which say when this situation comes up, it goes back. And there's a reason why it goes back, and that is the appeal panel can't make credibility determinations. How can they possibly do that? All they have is a record. They don't have the information in front of them. They don't even have all of the facts. So how can they possibly make a credibility determination? Now, sometimes it won't be a material dispute of fact. Sometimes it will come up where, for instance, in the case that they cite as a gotcha against us, where we said this doesn't have to go back because it's not responsive to our information. Sure. Other times a claimant will file information at the appeal panel stage that, in fact, is dispositive of the issue, and then the issue ends there. This is one of those rare cases where, in fact, you have material information that arguably cannot be reconciled, and all we want is somebody independent to look at this. This isn't a rubber stamp where they file something, and someone has to say, oh. Why is it the appeal panel, the independent, they know about this, and they concluded it didn't make a material difference? Well, two points. The appeal panel, they know a lot about the settlement. They know nothing about Pelloner and Milner because. But they know what you gave them, the screenshots. Correct. And we know about the affidavit, and they're satisfied with that. Correct. So why isn't that enough of an independent review? Well, Mr. Director, Your Honor, I still don't know from anybody, from the appeal panel, from Judge Barbee, and now from my friends over on the other side, what's the explanation for the folks who claim to be employed by Pelloner and Milner, including a senior engineer in Brussels? They didn't ever tell anything about that to the claims administrator. I think it's quite logical to me based on the nature of the business. You're selling industrial grade equipment. You're selling it overseas. You need somebody, two guys on the ground, one doing sales, one doing troubleshooting in case they have to ask questions in French or German. Big deal. Such people can often operate representing two or three different manufacturers. Well, sorry, Your Honor. The way they think, if that's a separate facility, which is defined very specifically as hard office building or something. Yes, Your Honor. Why wouldn't they have them in the U.S.? Because apparently you don't make any complaint that there are separate facilities in the U.S., right? Well, Your Honor. Other than the fact that they're these remote working employees. No, we think merits a little bit more investigation. I understand that. But I mean, it's it. Go ahead. Sure, Your Honor. That theory that you posit could very well be the case, in which case this appeal is over. In which case some paralegal could have figured it out, believe me, with some more creative inquiries. Well, perhaps, Your Honor. But we have no right to discovery here. We don't know. We can see their data, their financial data. We don't know where it's coming from. Now, they hate, for instance, that they do services, if I understood what they're correctly saying. Well, are they making revenue for that? If they are servicing products overseas, are they making revenue for that that they're reporting as part of their claim here? That's obviously material information. But no one has any idea. Nobody knows. And yet, to this day, I have still not heard an explanation for them what exactly is going on over there. And their appellate counsel comes here and says he doesn't know. So we are in the same situation. The problem here, this is true for most process type appeals. We don't know the facts because nobody has gone through the process to find the facts. Well, some things stick out in one's mind as being things that are quite defective, that are factually defective. But that's why I was asking for common sense, because this does not strike me offhand as being something that's that defective. Well, the common sense point, and my time is red. Go ahead. The common sense point here is if they are servicing products overseas, and if it is a Pelliner-Milner person doing that, and they don't deny that there is a facility overseas, a hard facility overseas, well, then what's happening? Well, they did say there was no facility. They said that it's not their facility. It's Milliner International. They say it's Milliner International. But there's no question that's a hard facility. If there's a Pelliner-Milner employee who is servicing products overseas, who's working out of that facility, which I don't think is all unreasonable to infer, that could be the situation, well, what's happening with that revenue, and what's happening with those expenses, and how come are they not rewarded? If it gets sent back, what happens? Because the send-back would be to Judge Barbier to exercise discretionary review. If he exercises discretionary review and comes out the same way — Well, sure, Your Honor. So there's two ways that this could go. Where are we going to find out what's going on in Belgium? If you — if the court finds that Judge Barbier abused his discretion by not sending it back, which means he hasn't treated this claim the way the other claims, then it goes all the way back to the claims administrator. And what they will do is they will ask Pelliner-Milner, can we see your human resource roles? Can we see your expenses associated with his employees? Can we see your contract with — They have a process. Correct. There's a process in place that would go back for that, if that's the case. If the court says that there's a split on authority about whether there has to be a to decide that in the first instance. That's why we have the two bases for abusive discretion. My time is up. I thank the court. Okay. Thank you very much. That concludes the arguments for today.